UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


BARBARA MORLEY,

               Plaintiff,                                   Case No. 4:05-cv-145

v.                                               HON. JANET T. NEFF

LAKEVIEW SCHOOL DISTRICT BOARD
OF EDUCATION, LAKEVIEW SCHOOL
DISTRICT, WESTLAKE ELEMENTARY
SCHOOL, KATHERINE KUSSY, AND
UNKNOWN EMPLOYEES OF THE
LAKEVIEW SCHOOL DISTRICT
A/K/A DOES,

               Defendants.
_____/


## OPINION

       Plaintiff, a kindergarten teacher, brought suit against the school district and others, seeking

legal and equitable relief relating to an alleged assault and battery, violations of her First and

Fourteenth Amendment rights, negligence, gross negligence, conspiracy, and age discrimination.

This matter is before the Court on defendants' two motions for summary judgment (Dkts 35 & 40),

which together challenge all fourteen counts of plaintiff's amended complaint.  For the reasons that

follow, this Court grants all defendants summary judgment of Counts 2, 3, 4, 6, 7, 8, 10, 11, 12, 13,

and 14.  This Court also grants defendants Lakeview School District, Lakeview School Board and

Westlake Elementary summary judgment of Count 9.  The remaining claims in Counts 1, 5, and 9

against defendant Katherine Kussy are state-law claims over which this Court declines to exercise

jurisdiction.  Accordingly, this Court dismisses plaintiff's complaint in its entirety.

I

In December 2005, when plaintiff was a 61-year-old kindergarten teacher at Westlake Elementary School within the Lakeview School District, she filed suit against (1) the Lakeview School District Board of Education, (2) the Lakeview School District, (3) Westlake Elementary School, (4) Westlake Elementary School principal Kussy, and (5) certain "unknown employees of the Lakeview School District" whom plaintiff has yet to identify.  She filed an amended complaint in July 2006, seeking legal and equitable relief relating to the following fourteen counts:

1.  "assault and battery" against Kussy;

2.  "violation of First Amendment and Michigan Constitution right to free speech" against the Lakeview School District and Lakeview School Board;

3.  "violation of Fourteenth Amendment right to due process and contractual right to due process" against the Lakeview School District, Lakeview School Board, and Westlake Elementary School;

4.  "42 U.S.C. § 1983, First, Fourth, Fifth and Fourteenth Amendment and Agreement violation" against Kussy and the Lakeview School District;

5.  "intentional tort commited [sic] by defendant Kussy"

6.  "violation ADEA, Elliot Larsen Act Civil Rights Act and Title VII for age discrimination" against Lakeview School District;

7.  "negligence" against Kussy and the Lakeview School District;

8.  "vicarious liability for gross negligence" against the Lakeview School District;

9.  "gross negligence" against Kussy, the Lakeview School District, Lakeview School Board, and Westlake Elementary School;

10.  "liability of defendant respondent superior gross negligent hiring" against the Lakeview School District;

2

11.        "gross negligent supervision" against "defendants;"

12.        "liability of defendant in respondent superior" against the Lakeview
           School District;

13.        "intentional infliction of emotional distress" against "defendants;"
           and

14.        "conspiracy to inflict emotional distress" against unknown
           defendants.

Plaintiff alleges that defendants, motivated by age discrimination, treat her unfairly and conspire to prevent her from voicing her opinions.  Specifically, plaintiff alleges that she does not receive timely written evaluations, has more administrators observing her work and interrupting her classes, and receives verbal reprimands for behavior for which younger teachers are not disciplined. (Amend. Compl. ¶¶ 17, 37.)  Plaintiff alleges that she was "told on several occasions that if she spoke at meetings and/or offered her opinions she would be fired."  (Amend. Compl. ¶ 18.)

According to plaintiff, defendants' "campaign of harassment and bullying" culminated in a physical assault against her on July 12, 2004.  (Amend. Compl. ¶¶ 16, 23.)  Plaintiff alleges that on that date, she and Kussy attended an off-campus seminar for educators from different school districts.  Plaintiff alleges that Kussy was "dissatisfied with the Plaintiff's comments and questions during the seminar" and "crept and approached plaintiff from her semi-blind side, viciously grabbed Plaintiff and placed Plaintiff in a neck lock, enclosing Plaintiff in her grasp."   (Amend. Compl. ¶ 44.) Plaintiff alleges that Kussy then "proceed[ed] to pull Plaintiff's head toward Defendant Kussy's mouth, verbally berated Plaintiff, telling Plaintiff not to exercise her Constitutional rights." (Amend. Compl. ¶¶ 27-33, 45.)

During discovery, the parties deposed Maureen Slamer, the seminar "facilitator" on the day in question and an eyewitness to the conversation between Kussy and plaintiff.  Slamer testified that

plaintiff was disruptive during her presentation to the kindergarten teachers and that she sought out Kussy to handle the situation as Kussy was the only administrator from the Lakeview School District attending the seminar.  (Slamer Dep. at 21-24.)  Slamer also testified that Kussy and plaintiff were "quietly talking" and that Kussy did not put her arm around plaintiff's neck or force her head down or otherwise physically restrain plaintiff.  (*Id.*)  Kussy similarly attested in her affidavit that she and plaintiff were "speaking in soft tones" and that at "no time" did she place her arms around plaintiff's neck or pull plaintiff's head down to her level.

Defendants procured affidavits from two other seminar attendees, Debra Caudill, a special education teacher at Lakeview Elementary School, and Jenny Lacy, another kindergarten teacher at Lakeview Elementary School.  Both Caudill and Lacy corroborated Kussy and Slamer's versions of events.  For example, Caudill attested that Kussy approached plaintiff and "spoke softly to her for a period of time," that Kussy was "not yelling, shouting or creating any commotion."  Caudill attested that "[a]t no time did Mrs. Kussy put Mrs. Morley in a headlock or drag her from the break room."

In October 2006, before discovery closed, defendants moved for summary judgment of plaintiff's Counts 2, 6, 7, 8, 10, 11, and 12, arguing that these counts were legally defective. Plaintiff filed a response, and defendants filed a reply to the response.

In December 2006, after discovery had closed, defendants filed a motion for summary judgment to supplement their initial motion and to ask this Court to dismiss all fourteen counts pursuant to FED. R. CIV. P. 56(c).  Plaintiff responded to defendants' second motion, supporting her argument with her deposition testimony, which reiterated her version of events in the amended complaint.  Plaintiff also provided a letter from another seminar attendee who was "truly shocked

4

upon hearing someone had complained and questioned Barb's professional integrity and behavior." Defendants filed a reply to the response.

II

"A party against whom a claim ... is asserted ... may, at any time, move with or without supporting affidavits for a summary judgment in the party's favor as to all or any part thereof." FED. R. CIV. P. 56(b).  Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c).

"By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-248 (1986) (emphases in original).  The inquiry is essentially "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-252.

The party moving for summary judgment has the burden of pointing the court to the absence of evidence in support of some essential element of the opponent's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989).  Once the moving party has made such a showing, the burden is on the nonmoving party to demonstrate the existence of a genuine issue for trial. *Id.*  The court must draw all inferences in a light most favorable to the nonmoving party but may grant summary judgment when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Agristor Fin. Corp.*

5

*v. Van Sickle*, 967 F.2d 233, 236 (6th Cir. 1992) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986)).

The adverse party "must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party." FED. R. CIV. P. 56(e).

III

A. Free Speech Claim

Referencing both federal and state free speech rights, plaintiff alleges in Count 2 that the July 12, 2004 event violated her right "to be free from retaliatory treatment based upon the exercise of her freedom of speech" and has had a "chilling effect on [her] ability to perform her job." (Amend. Compl. ¶¶ 60-72.) Plaintiff alleges that she was told that she could not "exercise her right to speak at meetings." (Amend. Compl. ¶¶ 18-21, 25, 39, 57-61.) Plaintiff alleges that the collective bargaining agreement encourages and requires her to provide the type of commentary she was threatened and assaulted for providing. (Amend. Compl. ¶¶ 55-56, 76-77.)

To establish a prima facie case of First Amendment retaliation, a plaintiff must show that (1) she was engaged in constitutionally protected speech, (2) she was subjected to an adverse action or was deprived of some benefit, and (3) the protected speech was a substantial or motivating factor in the adverse action. *Leary v. Daeschner,* 349 F.3d 888, 897 (6th Cir. 2003). The analysis of rights of free speech is the same under the state and federal constitutions. *In re Contempt of Dudzinski,* 667 N.W.2d 68, 71-72 (Mich. Ct. App. 2003).

To prove the first element, public employees such as plaintiff here must meet additional standards related to whether the constitutionally protected speech addresses matters of public concern, or whether the employee is merely making a statement pursuant to his or her official duties, which is not a communication insulated from employer discipline. See *Garcetti v. Ceballos,* ___ U.S. ___; 126 S.Ct. 1951, 1960 (2006); *Leary,* 349 F.3d at 897.

Whether the speech at issue touches on a public matter is a question of law for the court. *Barnes v. McDowell,* 848 F.2d 725, 733 (6th Cir. 1988). "[A]n employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record." *Connick v. Myers,* 461 U.S. 138, 147-148 (1983).

Here, defendants correctly argue that summary judgment of plaintiff's retaliatory free speech claim is necessary because plaintiff failed to identify the content of any statements of public concern she made. In order to meet her burden under FED. R. CIV. P. 56(c), a plaintiff must designate portions of the record "with enough specificity that the district court can readily identify the facts upon which the non-moving party relies." *Guarino v Brookfield Twp. Trustees,* 980 F.2d 399, 405 (6th Cir. 1992).

Plaintiff makes the ambiguous allegation that she was told that she could not "exercise her right to speak at meetings." (Amend. Compl. ¶¶ 18-21, 25, 39, 57-61.) In her response to defendants' first motion, plaintiff also fails to identify any specific examples of speech; instead, she generally asserts that at unspecified times, she had "spoken out regarding a wide range of subjects including but not limited [to] the safety of students, discrimination against teachers, discrimination on the basis of race and age." (10/30/2006 Resp. 8-9.)

In her response to defendant's supplemental motion, plaintiff points to her deposition testimony as evidence that she engaged in protected speech.  (1/16/2007 Resp. 15.)[1]  However, in the three excerpts from her deposition that she identifies, the first two excerpts do not identify any specific speech and the third excerpt references an incident where plaintiff allegedly spoke up to challenge a principal who allegedly wished to lock students in a storage room at some unspecified point in time.  (Morley Dep. at 114-119.)

Drawing all inferences in a light most favorable to plaintiff, the record before this Court could not lead a rational trier of fact to find for plaintiff on her retaliatory free speech claim because she has not identified any constitutionally protected speech.  Defendants have borne their burden of pointing this Court to the absence of evidence in support of the first element of plaintiff's prima facie case.  Defendants are therefore entitled to summary judgment of plaintiff's Count 2.

B.  Due Process Claim

In Count 3, plaintiff alleges that "[a]ccording to the [Lakeview Collective Bargaining] Agreement, Plaintiff is entitled to due process and said rights were denied by Defendant through physical assault and/or verbal intimidation through threat and harassment."  (Amend. Compl. ¶ 80.) She alleges that "[a]t no time was [she] afforded any hearing or other due process before being stripped of her rights through physical violence against her person and threats of being discharged." (Amend. Compl. ¶ 84.)  She also alleges that "[o]ther teachers who are younger and similar[ly]

---

[1] Plaintiff also points to her affidavit as evidence that she engaged in protected speech. Plaintiff claims that she attached the affidavit as exhibit E; however, there is no exhibit E within either set of exhibits plaintiff's counsel supplied this Court.

situated have not as a condition of their employment have not [sic] been required to relinquish their constitutional rights or otherwise be treated like the Plaintiff."  (Amend. Compl. ¶ 85.)

Defendants sought summary judgment of plaintiff's Count 3 in their supplemental motion, arguing that there are no proofs to substantiate her claim that she was treated differently than other teachers who spoke out or were younger than she is.

Without any citations to authority, plaintiff responds to defendants' motion that the CBA guarantees her due process rights and that she is entitled to enforce these rights in a court of law. (1/16/2007 Resp. 17.)  As evidence of her due process deprivations, plaintiff reiterates the same general assertions she made in her amended complaint.

Although not entirely clear (due to her imprecise language and failure to cite supporting case law), plaintiff's Count 3 appears to be her attempt to allege a substantive due process claim arising from a liberty interest in freedom from bodily restraint.[2]  "It is well established that persons have a fourteenth amendment liberty interest in freedom from bodily injury."  *Webb v. McCullough,* 828 F.2d 1151, 1158 (6th Cir. 1987).

A substantive due process claim differs from a state tort claim of assault and battery.  The Due Process Clause "'does not purport to supplant traditional tort law in laying down rules of conduct to regulate liability for injuries that attend living together in society.'"  *Doe v. Claiborne County, Tenn. By and Through Claiborne County Bd. of Educ.,* 103 F.3d 495, 511-512 (6th Cir. 1996) (quoting *Collins v. City of Harker Heights,* 503 U.S. 115, 128 (1992)).  "[N]ot every tort rises to the level of a constitutional violation."  *Id.*  Rather, "[t]he test for substantive due process claims

_____

[2] In Count 4 under 42 U.S.C. § 1983, plaintiff also characterizes the due process violation as a violation of her substantive due process rights.  (Amend. Compl. ¶ 87(a).)

is whether defendants' conduct 'shocks the conscience.'" *McMaster v. Cabinet for Human Resources,* 824 F.2d 518, 522 (6th Cir. 1987) (quoting *Rochin v. California,* 342 U.S. 165, 172 (1952)).

Here, assuming that Kussy exerted the physical influence plaintiff alleges, the incident may merit serious consequences but nonetheless falls short of demonstrating a constitutional violation. Reasonable minds could not find that the incident constitutes an abuse of official power so "shocking to the conscience" that it violates plaintiff's substantive due process rights. Accordingly, defendants are also entitled to summary judgment of plaintiff's Count 3.

## C. Claims under § 1983

In Count 4, under 42 U.S.C. § 1983, plaintiff alleges that defendant Kussy "demonstrated recklessly [sic] abandonment to causing Plaintiff harm and/or showed a lack of caution and care for the Plaintiff's right to her livelihood, threat of bodily harm, bodily harm and acted without due care and diligence in violation of Plaintiff's constitutionally protected rights." (Amend. Compl. ¶ 87.) Additionally, plaintiff alleges that "Defendant Lakeview School District is liable for the willful, wanton, reckless, gross negligence and/or negligent acts and/or omissions pursuant to customs, policies, or practices which resulted in the physical harm, deprivation of rights and/or emotional distress to the Plaintiff." (Amend. Compl. ¶ 90.)

"To survive summary judgment in a § 1983 action, Plaintiff must demonstrate a genuine issue of material fact as to the following 'two elements: 1) the deprivation of a right secured by the Constitution or laws of the United States and 2) the deprivation was caused by a person acting under

color of state law.'"  *Johnson v. Karnes,* 398 F.3d 868, 873 (6th Cir. 2005) (quoting *Ellison v. Garbarino,* 48 F.3d 192, 194 (6th Cir.1995)).

Respondeat superior is not available as a theory of recovery under § 1983.  *Monell v. Dep't of Social Services,* 436 U.S. 658, 691 (1978); *Doe,* 103 F.3d at 507.  Rather, under *Monell, supra,* a school district cannot be found liable unless the plaintiff can establish that an officially executed policy, or the toleration of a custom within the school district leads to, causes, or results in the deprivation of a constitutionally protected right.  *Id.*

Plaintiff is apparently using the § 1983 vehicle to again allege that defendants deprived her of her First Amendment free speech rights and her Fourteenth Amendment substantive due process rights.  For the reasons stated in this Court's analysis of plaintiff's Counts 2 and 3, plaintiff has sustained neither claim.  Accordingly, defendants are also entitled to summary judgment of plaintiff's Count 4.

### D.  Age Discrimination Claims

In Count 6, plaintiff claims age discrimination under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 623(a), and Michigan's Elliot-Larsen Civil Rights Act (ELCRA),  MICH. COMP. LAWS § 37.2202(a).[3]  Specifically, plaintiff alleges that "defendants have sought to weed out, remove and otherwise discharge older employees in order to save money ... through including but not limited to bullying, increase[d] scrutiny and unjust discipline."  (Amend. Compl. ¶¶ 11, 17, 85 & 107.)   Regarding the latter, plaintiff alleges that younger employees have not been

---

[3] Plaintiff also erroneously references Title VII, which does not address age discrimination, only discrimination because of an individual's "race, color, religion, sex, or national origin."  42 U.S.C. § 2000e(a)(1).

"disciplined" in the same manner she was at the off-site seminar.  (Amend. Compl. ¶¶ 11, 17, 85, & 108.)

A plaintiff can establish a discrimination claim with direct or circumstantial evidence. *Town v. Michigan Bell Telephone Co.,* 455 Mich. 688, 694-695 (1997). When the claim is based on circumstantial evidence, as here, courts apply the three-step burden shifting approach from *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973).  *McClain v. Nw. Cmty. Corr. Center Judicial Corr. Bd.,* 440 F.3d 320, 332 (6th Cir. 2006).  Because the prima facie case requirements are essentially the same under Michigan law, see *Sniecinski v. Blue Cross and Blue Shield of Michigan,* 666 N.W.2d 186, 193 (Mich. 2003), plaintiff's federal and state-law claims of age discrimination may be analyzed together.

Under the *McDonnell Douglas* approach, once a plaintiff presents a prima facie case, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action.  *Sniecinski,* 666 N.W.2d  at 193.  "If a defendant produces such evidence, the presumption is rebutted, and the burden shifts back to the plaintiff to show that the defendant's reasons were not the true reasons, but a mere pretext for discrimination." *Id.*

"The burden of establishing a prima facie case of disparate treatment is not onerous."  *Blair v. Henry Filters, Inc.,* ___ F.3d ___ , 2007 WL 2983158 at *7 (6th Cir. 2007) (quoting *Texas Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 253 (1981).  "Generally, at the summary judgment stage, a plaintiff's burden is merely to present evidence from which a reasonable jury could conclude that the plaintiff suffered an adverse employment action 'under circumstances which give rise to an inference of unlawful discrimination.'"  *Id.* (quoting *Burdine, supra*).

Defendants argue that plaintiff has not presented any evidence of an adverse employment action.  Defendants point out that plaintiff does not dispute that she continues to teach kindergarten in the same classroom of the same building at the same rate of pay with the same hours under the same employment contract.

Plaintiff responds that she has suffered a change in her "status" as a teacher inasmuch as "silence [is] a condition of her employment."  (10/30/2006 Resp. 15.)  She also asserts that she has been "required to relinquish her constitutional rights" and "had her tenure threatened and endure[d] assaults."  (1/16/2007 Resp. 19.)

The Sixth Circuit has held that to prevent lawsuits based upon trivial workplace dissatisfactions, a plaintiff must prove the existence of an "adverse employment action" to support a Title VII claim.  *White v. Burlington N. & Santa Fe Ry., Co.,* 364 F.3d 789, 795 (6th Cir. 2004). The Sixth Circuit has identified several factors a court should consider in determining the materiality of an adverse action, including whether the action involved (1) a job termination, (2) a demotion coupled with decreased salary, (3) a less distinguished title, (4) a material loss of benefits, (5) significantly diminished material responsibilities, and (6) any other indices that are unique to a particular employment situation.  *Kocsis v. Multi-Care Mgmt. Inc.,* 97 F.3d 876, 885 (6th Cir. 1996). A "mere inconvenience or an alteration of job responsibilities" or a "bruised ego" is not enough to constitute an adverse employment action.  *Id.* at 886.

The factors delineated in *Kocsis* demonstrate the immateriality of plaintiff's claims of higher scrutiny, verbal discipline, or harsh language in this case.  These claims tend to instead fall on the "bruised ego" side of the adverse employment action inquiry.

Plaintiff's allegation that she is now subject to an assault whenever she exercises her free speech rights is also insufficient to support an age discrimination claim against defendants. There is no proof that Kussy's alleged assault against plaintiff, even if a true incident and even if motivated by plaintiff's age, has translated into a condition of plaintiff's employment. Plaintiff's allegation that "silence" is now a condition of her employment similarly fails for a lack of record support.

In short, there is no evidence from which a reasonable jury could conclude that the plaintiff suffered an adverse employment action under circumstances that give rise to an inference of unlawful age discrimination. Defendants are therefore entitled to summary judgment of plaintiff's Count 6.

### E.  Negligence

Plaintiff's Count 7 is a state law negligence claim. Plaintiff alleges that defendant Kussy "negligently and carelessly placed Plaintiff in a neck lock, proceeded to drag Plaintiff down a hall to berate and belittle the Plaintiff regarding Plaintiff's work performance and Plaintiff['s] comments regarding the effectiveness of a speaker and seminar." (Amend. Compl. ¶ 115.) Plaintiff alleges that the school district was vicariously liable for Kussy's negligence inasmuch as Kussy acted "in the course and general scope of employment pursuant to the authority given the employee by Defendant Lakeview School District." (Amend. Compl. ¶ 116.)

Defendants moved for summary judgment of plaintiff's Count 7 in their first motion, arguing that the governmental immunity statute bars claims for ordinary negligence against individual government employees engaged in a governmental function.

Plaintiff responds that her claim for negligence is not barred because an assault and battery is not an exercise of a "governmental function" under the governmental immunity act. Plaintiff frames the issue as "whether committing assault and battery to stop Barbara from speaking constitutes a government function." (10/30/2006 Resp. 18.) Plaintiff emphasizes that defendants could not choose an illegal means to accomplish a government function that it could not achieve legally.

Subsection (2) of the governmental immunity statute applies to government employees and provides that "each ... employee of a governmental agency ... is immune from tort liability for an injury to a person ... caused by the ... employee ... while in the course of employment if all of the following are met:  (a) the ... employee ... is acting or reasonably believes he or she is acting within the scope of his or her authority; (b) the governmental agency is engaged in the exercise or discharge of a governmental function; [and] (c) the ... employee's ... conduct does not amount to gross negligence that is the proximate cause of the injury or damage." MICH. COMP. LAWS § 691.1407(2).

Relevant to subsection (2)(b) and plaintiff's argument here, "governmental function" is statutorily defined as "an activity that is expressly or impliedly mandated or authorized by constitution, statute, local charter or ordinance, or other law." MICH. COMP. LAWS § 691.1401(f). "Whenever a governmental agency engages in an activity which is not expressly or impliedly mandated or authorized by constitution, statute, or other law ( i.e., an ultra vires activity), it is not engaging in the exercise or discharge of a governmental function." *Ross v. Consumers Power Co.,* 363 N.W.2d 641, 661 (Mich. 1984).

"To determine whether a governmental agency is engaged in a governmental function, the focus must be on the general activity, not the specific conduct involved at the time of the tort."

*Pardon v. Finkel,* 540 N.W.2d 774, 776 (Mich. Ct. App. 1995). "Improper performance of an activity authorized by law is, despite its impropriety, still 'authorized' within the meaning of the *Ross* governmental function test." *Richardson v. Jackson County,* 443 N.W.2d 105, 108 (Mich. 1989). In other words, improper performance of the authorized activity does not render the activity ultra vires. *Id.*

"The operation of a public school is a governmental function." *Stringwell v. Ann Arbor Pub. Sch. Dist.,* 686 N.W.2d 825, 827 (Mich. Ct. App. 2004). "The screening, hiring and supervision of teachers is a government function." *Bozarth v. Harper Creek Bd. of Educ.,* 288 N.W.2d 424, 425 (Mich. Ct. App. 1979).

Here, Kussy's general activity of supervising an employee at a school seminar is an activity related to a governmental function within the meaning of the act. Even assuming arguendo that Kussy negligently performed the authorized activity, her negligent performance could not take away the immunity afforded her by the statute. Defendants are therefore entitled to summary judgment of plaintiff's Count 7.

F.  Gross Negligence

In Counts 8 through 12, plaintiff alleges the following state law claims of gross negligence against the school district, her school board, and Kussy's school: "vicarious liability for gross negligence" (Count 8), "gross negligence" (Count 9), "liability of defendant respondent superior gross negligent hiring" (Count 10), "gross negligent supervision" (Count 11), and "liability of defendant in respondeat superior" (Count 12). Plaintiff includes Kussy within her allegations in Count 9.

Defendants argue that Counts 8 and 10 through 12 are barred by governmental immunity as a matter of law under the broad grant of immunity afforded governmental agencies in MICH. COMP. LAWS § 691.1407(1).  Defendants argue that plaintiff has improperly relied on the gross negligence exception of subsection (2)(c), which they opine applies only to individuals.  Defendants briefly argue that Count 9 (against Kussy) should also be summarily dismissed because "it is based on plaintiff's allegations of assault and battery, which is logically and inconsistent with a gross negligence claim."

Plaintiff responds that her "claim for vicarious liability should not be dismissed because the Defendant committed a tort while acting during the course of employment and within the scope of his authority and the tort did not occur as a result of the Defendant executing a governmental function."

Defendants reply, pointing out that "if plaintiff could impose liability on the school district through the simple expedient of invoking vicarious liability, [then] the distinction between individual and institutional liability would disappear."

Subsection (1) of the governmental immunity statute provides in pertinent part that "a governmental agency is immune from tort liability if the governmental agency is engaged in the exercise or discharge of a governmental function."  MICH. COMP. LAWS § 691.1407(1).

Again, the operation of a public school system is a governmental function, *Stringwell,* 686 N.W.2d at 827, as is the supervision of public school teachers, *Bozarth,* 288 N.W.2d at 425. Consequently, plaintiff's Counts 8, 9 (inasmuch as it is directed to the school defendants), and 10 through 12 are barred by governmental immunity as a matter of law by the broad grant of immunity granted to governmental agencies.

17

Defendants are correct that plaintiff's reliance on the gross negligence exception of subsection (2)(c) is misplaced.  Subsection (1) of the statute applies to agencies whereas subsection (2) applies to officers, employees, members and volunteers of governmental agencies.  The gross negligence exception to governmental immunity "does not state that it applies to the governmental agencies themselves."  *Gracey v. Wayne County Clerk,* 540 N.W.2d 710, 714 (Mich. Ct. App. 1995), overruled on other grounds in *Am. Transmissions, Inc. v. Attorney Gen.,* 560 N.W.2d 50 (Mich. 1997).  Therefore, defendants Lakeview School District, Lakeview School Board and Westlake Elementary have demonstrated that they are entitled to summary judgment of the allegations in Count 9 against them.

Conversely, there has been no showing that defendant Kussy is entitled to summary judgment of the allegations in Count 9 against her.  The gross negligence exception to immunity, MICH. COMP. LAWS § 691.1407(2)(c), applies to defendant Kussy individually.  Gross negligence is defined in the statute as "conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results."  MICH. COMP. LAWS § 691.1407(7)(a).  Defendants have not proffered an argument that reveals the absence of evidence in support of some essential element of plaintiff's gross negligence claim against Kussy.  See *Celotex,* 477 U.S. at 323.

### G.   Intentional Infliction of Emotional Distress Claim

In Count 13, plaintiff alleges that "defendant Kussy, who is the defendant Lakeview School District's agent, engaged in the conduct described above recklessly or with the intent of causing the Plaintiff severe emotional distress."  (Amend. Compl. ¶ 153.)  Plaintiff claims to have suffered sleepless nights, fear and anxiety in entering the work place, fear of further attacks, and reclusiveness as a result of Kussy's conduct.  (Amend. Compl. ¶ 156.)

18

Defendants briefly argue that they are entitled to summary judgment of Count 13 because "this claim arises out of the alleged assault and battery, which did not occur."

In a similarly brief vein, plaintiff responds that "it is clear that defendants have acted to cause Barbara emotional distress by assaulting her, disciplin[ing] her, monitoring her and ordering [her] to abdicate her Constitutional Rights."

Recovering for the tort of intentional infliction of emotional distress requires a plaintiff to prove the following four elements: (1) extreme and outrageous conduct, (2) intent or recklessness, (3) causation, and (4) severe emotional distress. *VanVorous v. Burmeister,* 687 N.W.2d 132, 141-142 (Mich. Ct. App. 2004).

Whether the offending conduct is extreme and outrageous is initially a question of law for the court. *VanVorous,* 687 N.W.2d at 142. The threshold for showing extreme and outrageous conduct is high. *Id.* No cause of action will necessarily lie even where a defendant acts with tortious or even criminal intent; rather, liability is imposed only where "'the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Id.* (quoting Restatement Torts, 2d, § 46, pp. 72-73).

Here, too, even if Kussy acted with tortious or even criminal intent in exerting physical influence over plaintiff, liability is imposed only where the conduct is so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Because plaintiff's allegations about Kussy's conduct do not reach this high measure, defendants are entitled to summary judgment of plaintiff's Count 13.

H.  Conspiracy Claim

In Count 14, plaintiff alleges that unknown school employees have "knowingly, willfully and with malicious intent" conspired to "verbally abuse Plaintiff and to cause Plaintiff severe emotional and physical distress."  (Amend. Compl. ¶¶ 159-165.)

Defendants briefly argue that they are entitled to summary judgment of Count 14 because "plaintiff has not experienced an adverse employment action and there is no evidence of a conspiracy by unknown persons with Lakeview District."

Plaintiff responds that Count 14 should "not be dismissed because defendant relies only upon affidavit[s] by persons who have assisted in the perpetration of the conspiracy, are biased and give inconsistent accounts."

The elements of a state law count of civil conspiracy are (1) a concerted action (2) by a combination of two or more persons (3) to accomplish an unlawful purpose (4) or a lawful purpose by unlawful means.  *Admiral Ins. Co. v. Columbia Casualty Ins. Co.,* 194 Mich. App. 300, 313; 486 N.W.2d 351 (1992).

Plaintiff's vague and conclusory allegations that she is the victim of a conspiracy by certain unknown colleagues is insufficient to withstand defendants' motion for summary judgment.  See, e.g., *Sankar v. Detroit Bd. of Education,* 160 Mich. App. 470, 481-482; 409 N.W.2d 213 (1987).

IV

For the foregoing reasons, this Court grants all defendants summary judgment of Counts 2, 3, 4, 6, 7, 8, 10, 11, 12, 13, and 14.  This Court also grants defendants Lakeview School District, Lakeview School Board and Westlake Elementary summary judgment of Count 9.  The remaining claims in Counts 1, 5, and 9 against defendant Katherine Kussy are state-law claims over which this Court declines to exercise jurisdiction.  See 28 U.S.C. § 1367(c)(3); *United Mine Workers v. Gibbs,* 383 U.S. 715, 726 (1966).  Accordingly, this Court dismisses plaintiff's complaint in its entirety.  An Order will be entered consistent with this Opinion.

DATED:  December 3, 2007                    /s/ Janet T. Neff
                                            JANET T. NEFF
                                            United States District Judge